UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FREDERICK O. SILVER, | CASE NO. 3:25-cv-05175-DGE |
| Plaintiff, | ORDER ON MOTION TO ENFORCE SETTLEMENT (DKT. NO. 99) |
| v. | |
| CAPITAL ONE N.A., et al., | |
| Defendants. | |

Before the Court is Defendant Experian Information Solutions, Inc.'s ("Experian")

motion to enforce a settlement allegedly entered into between itself and Plaintiff.  (Dkt. No. 99.)

For the following reasons, the Court GRANTS IN PART Experian's motion.

## I        BACKGROUND

Plaintiff filed his initial complaint against Capital One on March 10, 2025 alleging

violations of the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681 *et seq.*  (Dkt. No. 5.)

Plaintiff filed his first amended complaint on June 21, 2025.  (Dkt. No. 20.)  On October 1, 2025,

Plaintiff filed a motion for leave to file a second amended complaint to add Experian and two

ORDER ON MOTION TO ENFORCE SETTLEMENT (DKT. NO. 99) - 1

other consumer reporting agencies as defendants. (Dkt. No. 46.) For reasons not relevant to the analysis of the motion to enforce, Plaintiff did not file his second amended complaint adding Experian as a defendant until February 4, 2026. (Dkt. No. 67.)

Between March 24, 2026 and March 25, 2026, Plaintiff and Experian engaged in settlement negotiations via email. (*See* Dkt. No. 99-2.) On March 25, 2026, at 10:40 a.m., counsel for Experian emailed Plaintiff: "Experian's best and final offer is to pay $1,500 plus permanent deletion of the Capital One and Barclays tradelines in exchange for dismissal with prejudice of Experian and a signed/notarized settlement agreement and W-9." (*Id.* at 1.) At 12:12 p.m., Plaintiff responded,

> I accept Experian's offer of payment of $1,500 plus permanent deletion of the Capital One and Barclays tradelines in exchange for dismissal with prejudice of Experian and a signed/notarized settlement agreement and W-9.
> Please send the settlement agreement and W-9 for my review and execution.

(Dkt. No. 99-3 at 1.)

On March 30, 2026, Experian emailed Plaintiff the settlement agreement "containing an updated consumer disclosure showing the deletion of the agreed two tradelines[,]" and a blank W-9 form. (Dkt. No. 99-1 at 2.) Experian alleges that as of April 16, 2026, it has not received a signed settlement agreement, and Plaintiff is instead "requesting more cash as consideration for dismissal." (*Id.*)

On April 16, 2026, Experian filed a motion to enforce the settlement agreement. (Dkt. No. 99.) On the same day, Plaintiff filed his opposition.[1] (Dkt. No. 100.) Plaintiff does not

---

[1] Plaintiff also filed two surreplies (Dkt. Nos. 104, 116) and a notice of "newly relevant evidence in opposition of Experian's motion to enforce" (Dkt. No. 106). Under Local Civil Rule 7(g), a surreply shall not exceed three pages and can be filed for the limited purpose of "request[ing] to strike material contained in or attached to a reply brief." "Extraneous argument or a surreply filed for any other reason will not be considered." LCR 7(g)(2). Both of Plaintiff's surreplies are over five pages and do not request to strike any material—and thus do not comport with the Local Civil

ORDER ON MOTION TO ENFORCE SETTLEMENT (DKT. NO. 99) - 2

dispute he agreed to settle the case for $1,500 and deletion of the two tradelines, but argues he was not obligated to sign the March 30 settlement agreement because it contained material terms he did not agreed to, including "broad release language, confidentiality obligations, integration language, and a prevailing-party attorneys' fees clause in any enforcement action."  (Dkt. No. 100 at 1–2.)  These allegedly new material terms include:

> 1. Except for the rights and obligations created by this Agreement, Plaintiff for themself, and their heirs, executors, administrators, successors and assigns, hereby releases and forever discharges Experian, and its agents, servants, officers, directors, employees, shareholders, parents, subsidiaries, affiliates, attorneys, successors and assigns, none of whom admit any liability but all expressly deny liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature, known or unknown, now existing which are based directly or indirectly upon facts, events, transactions or occurrences related to, alleged, embraced by or otherwise referred to at any time in the Lawsuit.
>
> . . . .
>
> 11. This Agreement constitutes the sole and entire agreement between Plaintiff and Experian, and supersedes all prior agreements, negotiations, and discussions between the Parties with respect to the subject matter covered hereby.  Plaintiff and Experian acknowledge that, in entering into this Agreement, they are not relying upon any representations or warranties made by anyone other than those terms and provisions expressly set forth in this Agreement.  It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing, duly executed by authorized representatives of Plaintiff and Experian, respectively.  The Parties further acknowledge and agree that they will make no claim at any time or place that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever.
>
> 10. Unless otherwise required by law or court order, Plaintiff agrees to keep this Agreement confidential, and not disclose the contents hereof; except that, when necessary to assert a due legal right, Plaintiff may file this Agreement with a court of competent jurisdiction under seal so that the contents are not revealed beyond disclosure to duly authorized court personnel such as judges and court clerks.
>
> . . . .

---

Rules.  (*See* Dkt. Nos. 104, 116.)  The Court therefore does not consider either.  Similarly, the Court does not consider Plaintiff's notice of "newly relevant evidence."  (Dkt. No. 106.)

ORDER ON MOTION TO ENFORCE SETTLEMENT (DKT. NO. 99) - 3

13. In any action to enforce the terms of this Agreement (the "Enforcement Action"), including any action to recover damages for any violations herein including the confidentiality provisions of Paragraph 10 above, the prevailing party of the Enforcement Action shall be entitled to recover reasonable attorneys' fees and disbursements in addition to costs of suit.

(Dkt. No. 99-4 at 11–15.)

## II    DISCUSSION

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). However, a court may only enforce *complete* settlement agreements. *Id.* "Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Id.*

Here, summary disposition without an evidentiary hearing is appropriate. All of the parties' settlement-related communications were via email and those emails have been provided to the Court. No party has disputed the authenticity of the emails. Thus, there is no possibility of a dispute over the "material facts" concerning the existence or terms of the purported settlement. Indeed, the only possible additional information that could be provided during an evidentiary hearing is the parties' testimony about their intent in sending the emails in question, but such testimony would not be material or relevant in determining whether an enforcement settlement agreement was formed. *See Condon v. Condon*, 298 P.3d 86, 92 (Wash. 2013) ("Washington follows the objective manifestation theory of contracts, which has us determine the intent of the parties based on the objective manifestations of the agreement, rather than any unexpressed subjective intent of the parties.").

State contract law governs whether the parties reached an enforceable agreement. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). One of the essential elements to contract formation

ORDER ON MOTION TO ENFORCE SETTLEMENT (DKT. NO. 99) - 4

is mutual assent, which often takes the form of an offer and an acceptance of that offer.  *Pacific Cascade Corp. v. Nimmer,* 608 P.2d 266, 268 (Wash. Ct. App. 1980).  The intention to contract is distinct from the promise to perform:

> [G]reat care should . . . be taken not to construe the conduct, declarations, or letters of a party as proposals when they are intended only as preliminary negotiations.  The question in such cases is, did the offerer mean to submit a proposition, or was he only settling the terms of an agreement on which he proposed to enter, after all its particulars are adjusted?  If it is intended merely to start negotiations which may subsequently result in a contract, or is intended to call forth an offer from the one to whom it is addressed, its acceptance does not consummate a contract.  The fact that the parties do intend a subsequent agreement to be made is strong evidence to show that they do not intend the previous negotiations to amount to any proposal or acceptance.  An agreement, to be finally settled, must comprise all the terms which the parties intended to introduce into the agreement and until the terms of a proposal are settled, the proposer is at liberty to retire from the bargain.

*Id.* at 268–269 (citation omitted).  Under Washington law, courts consider three factors when determining whether informal writings such as letters and emails are sufficient to establish a contract where the parties contemplate the execution of a formal agreement: (1) the subject matter has been agreed upon, (2) all terms stated in the informal writings, and (3) the parties intended a binding agreement prior to execution of a formal agreement.[2]  *Morris v. Maks,* 850 P.2d 1357, 1359 (Wash. Ct. App. 1993).

The parties' email exchanges on March 25, 2026 included both an offer from Experian and an acceptance from Plaintiff.  Experian offered, and Plaintiff accepted, to pay a sum of money and delete two tradeline accounts in exchange for Plaintiff's dismissal of the lawsuit with prejudice and signing a settlement agreement and W-9 form.  The Court does not read Plaintiff's

---

[2] But the fact that the parties contemplated drafting a formal settlement agreement does not necessarily mean that they intended to be bound only upon execution of that document.  *Morris*, 850 P.2d at 1360; *see also Loewi v. Long*, 134 P. 673, 674 (Wash. 1913) (if the subject matter is not dispute, the terms are agreed upon, and the intention of the parties is plain, a contract exists even though the parties may contemplate a more formal contract be subsequently executed).

ORDER ON MOTION TO ENFORCE SETTLEMENT (DKT. NO. 99) - 5

response brief as reneging on the March 25 email agreement, but instead refusing to be bound by the "new material obligations" included in the settlement agreement. (*See* Dkt. No. 100 at 4) ("Plaintiff did not repudiate the narrow email agreement by refusing to sign Experian's overbroad draft."). However, paragraph one of the settlement agreement simply explains that Plaintiff is dismissing the case against Experian with prejudice—a term Plaintiff agreed to in the March 25 email. (Dkt. No. 99-3 at 1.) Similarly, paragraph 11 states only that the settlement agreement shall constitute the final agreement between the parties, and any alteration must be made in writing. (Dkt. No. 99-4 at 14.) As this is not material to the contract, Plaintiff may be bound to it. However, the Court agrees with Plaintiff that the March 25 email did not include either the confidentiality or the fee-shifting provisions.

### III    CONCLUSION

Accordingly, and having considered the parties' briefing and the remaining record, the Court GRANTS IN PART Experian's motion to enforce. (Dkt. No. 99.) Experian shall provide Plaintiff a new formalized settlement agreement memorializing the terms agreed to in the March 25, 2026 email exchange only, and shall not include terms, such as the confidentiality or fee-shifting terms, that were not included in the March 25 email. Thereafter, the Parties shall execute the settlement agreement and then comply with the terms agreed to.

Additionally, Experian's motion to stay pending resolution of its motion to enforce is DENIED as moot. (Dkt. No. 107.) Notwithstanding, Plaintiff and Experian have reached a settlement, and no further discovery shall be allowed. The Parties shall provide a status report, no later than **June 17, 2026** regarding the finalization of the settlement agreement so that the Court can dismiss Experian from this litigation.

The Clerk is directed to calendar this event.

ORDER ON MOTION TO ENFORCE SETTLEMENT (DKT. NO. 99) - 6

Dated this 18th day of May, 2026.

David G. Estudillo
United States District Judge

ORDER ON MOTION TO ENFORCE SETTLEMENT (DKT. NO. 99) - 7